IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KEVIN FOSTER, *et al.*,          *
                                 *
        Plaintiffs,              *
                                 *
                                 *   CIVIL ACTION NO. 23-00069-TFM-B
vs.                              *
                                 *
DR. R. LEE IRVIN,                *
                                 *
        Defendant.               *

<u>REPORT AND RECOMMENDATION</u>

This action is before the Court on Defendant Dr. R. Lee Irvin's motion to dismiss Plaintiffs' second amended complaint (Doc. 36). The motion has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docs. 3, 14). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendant Irvin's motion (Doc. 36) be **GRANTED in part**, that Plaintiffs' federal claims be **DISMISSED with prejudice**, and that Plaintiffs' state law claims be **DISMISSED without prejudice** as to their ability to be refiled in state court.

I.   <u>BACKGROUND</u>

Plaintiff Kevin Foster ("Foster"), proceeding without counsel, commenced this action by filing a complaint against Defendant Dr. R. Lee Irvin ("Dr. Irvin") and two unnamed members of his medical staff. (Doc. 1). Foster alleged that Dr. Irvin and his staff racially harassed him while he accompanied his wife,

Cynthia Marie Perry ("Perry"), to her outpatient surgical appointment, and that Defendants mistreated and subsequently failed to treat Perry on account of her and Foster's race. (See id.). Dr. Irvin filed a motion to dismiss Foster's complaint. (Doc. 12). In response, Foster filed a first amended complaint, which superseded his original complaint and became the operative pleading. (Doc. 13). Dr. Irvin's motion to dismiss Foster's original complaint was consequently denied as moot. (Doc. 14).

Dr. Irvin then moved to dismiss Foster's first amended complaint. (Doc. 15). Foster subsequently filed a motion for leave to file a second amended complaint[1] adding Perry as a Plaintiff in this action.[2] (Doc. 23). Along with the motion for leave to amend, Foster and Perry submitted a proposed second amended complaint.[3] (Doc. 24). Dr. Irvin opposed the motion for leave to amend and asserted that amendment was futile because the proposed second amended complaint still failed to state a claim upon which relief could be granted. (Doc. 27).

---

[1] Foster had previously filed a second amended complaint that was stricken because it was filed without leave of Court and without Dr. Irvin's consent. (See Docs. 18, 21).

[2] Foster and Perry also sought to add additional counts, to remove references to certain statutes and add references to others, to increase the amount of damages requested, and to make other minor revisions, but they did not seek to make any "alterations [to] the factual basis of the claims." (See Doc. 23 at 6-7; Doc. 24).

[3] The proposed second amended complaint was signed by both Foster and Perry. (Doc. 24 at 20-21).

In an order dated November 7, 2023, the Court found that several aspects of the proposed second amended complaint made it difficult to discern what claims for relief Foster and Perry were attempting to assert and to evaluate whether a more carefully drafted complaint could state a claim for relief. (Doc. 33 at 17). Specifically, the Court found that the proposed second amended complaint was a shotgun pleading because it failed to adequately identify the legal claims for relief that Foster and Perry were seeking to assert in their eight counts, it did not clarify which statute or other legal theory each "cause of action" was brought under, and it appeared to inappropriately lump multiple causes of action or claims for relief into a single count. (Id. at 18). The Court also noted that the proposed second amended complaint failed to differentiate between or specify the facts relevant to each count and largely failed to differentiate between Foster's claims and Perry's claims. (Id. at 18-19). The Court further explained that the jurisdictional allegations in the proposed second amended complaint were deficient. (Id. at 19-20). Additionally, the Court noted that Foster's first amended complaint (which at the time was his operative pleading) contained most of the same pleading deficiencies as those outlined in the proposed second amended complaint. (Id. at 20 n.10). The Court concluded that the proposed second amended complaint failed to provide "adequate notice as to which legal claims Foster and Perry

propose to assert in this action and which factual allegations are intended to support each of those claims." (Id. at 20). Thus, the Court found that while the proposed second amended complaint was deficient as pled, it could not determine whether a more carefully drafted complaint might state a viable claim. (Id.).

In light of the foregoing, the Court granted the motion for leave to amend in part and denied it in part. (Id.). The Court denied the motion to the extent it sought leave to file the proposed second amended complaint that was submitted along with the motion, because the proposed amendment did "not plead Foster's and Perry's claims with sufficient specificity to conform to Rules 8 and 10 of the Federal Rules of Civil Procedure." (Id. at 20 n.11). However, the Court granted leave for Foster and Perry to file a second amended complaint, provided that the second amended complaint set forth "each Plaintiff's claims with sufficient specificity to conform to Rules 8 and 10 of the Federal Rules of Civil Procedure" and addressed and corrected the pleading deficiencies noted in the Court's order. (Id. at 20-21). The Court provided specific pleading instructions for Plaintiffs to follow in order to cure the defects noted in the Court's order and formulate a proper complaint. (Id. at 21).

The Court cautioned Plaintiffs that if their second amended complaint failed to address and correct the pleading deficiencies described in the Court's order, the undersigned would recommend

that this action be dismissed with prejudice.  (Id. at 22).  The Court further cautioned Plaintiffs that there would be no further opportunities to amend in order to correct pleading deficiencies or attempt to state a claim for relief.  (Id.).  The Court also noted that Foster had twice amended or sought to amend his complaint in response to a motion to dismiss filed by Dr. Irvin, and it warned Foster that he would receive no further opportunities to amend in response to a motion to dismiss filed by Dr. Irvin. (Id.).

On November 28, 2023, Foster and Perry filed a second amended complaint[4] against Dr. Irvin.  (Doc. 34).  Upon filing, Plaintiffs' second amended complaint became the operative pleading in this case, and Dr. Irvin's motion to dismiss the first amended complaint (Doc. 15) was consequently denied as moot.  (Doc. 35).

Plaintiffs' second amended complaint names Dr. Irvin as the sole Defendant.[5]  (See Doc. 34).  In the "Jurisdictional Statement and Parties" section, Plaintiffs allege that Foster is a citizen

---

[4] Despite the Court's specific instruction to identify their pleading as a second amended complaint (see Doc. 33 at 21), Plaintiffs incorrectly labeled their pleading as a "Third Amended Civil Complaint and Jury Demand."  (See Doc. 34 at 1).

[5] All previous iterations of the complaint listed Dr. Irvin and two unnamed staff members (identified as "UNIFORMED FEMALE NURSE" and "NON-UNIFORMED FEMALE STAFF") as Defendants.  (See Docs. 1, 13, 18, 24).  However, Dr. Irvin is the only Defendant named in the operative second amended complaint.  (See Doc. 34).

of Florida "but temporarily resides" in Mobile, Alabama.[6]  (Id. at
1).  Plaintiffs allege that Perry is a citizen of Alabama who
"currently resides" at the same address as Foster in Mobile,
Alabama.  (Id. at 2).  Plaintiffs further allege that Dr. Irvin is
"a Pain Management Doctor" who "practiced and practices at the
Pain Management of Mobile, a Division, Subsidiary or Affiliate of
USA Health Center . . . receiving federal funds within the meaning
of *42 USC§2000(d)*."  (Id.).  Plaintiffs state: "Parties to this
action being citizens of different states, as well as this action
involving federal questions, this court has jurisdiction pursuant
to *28 USC §1343* and *1367 etc.*"  (Id.).

In the "Statement of Facts" section, Plaintiffs allege that
on or about May 10, 2021, Foster escorted Perry to Pain Management
of Mobile for a scheduled outpatient surgical procedure to address
back pain, which was to be performed by Dr. Irvin.  (Id.).
Plaintiffs allege that there were "three initial staff persons on
duty that day; two females and one male."[7]  (Id.).  Plaintiffs
identify the two female staff members present as a "UNIFORMED

---

[6] Unless otherwise indicated by brackets, quoted language from
Plaintiffs' *pro se* filings is reproduced herein without
modification or correction for typographical, grammar, or spelling
errors.

[7] Unlike the two female staff members, the "male staff person" is
not alleged to have been "involved in the creation of hostilities"
as alleged in Plaintiffs' second amended complaint. (See Doc. 34
at 2).

FEMALE NURSE" (the "nurse") and a "NON-UNIFORMED FEMALE STAFF" (the "staff member").  (Id. at 2-3).

Plaintiffs allege that Foster and Perry were directed to a patient waiting room that contained two plastic chairs and a medical bed, and they were seated in the chairs.  (Id. at 3). Minutes after they were seated, the staff member entered the room, gave Perry a pill,[8] and instructed her to chew the pill, stating: "I want it to take effect within five minutes."  (Id.).  Perry chewed the pill as instructed, and the staff member gave her "a pill cup of water to chase the drug down."  (Id.).  Perry "was never instructed to lie on the bed, nor did anyone give any instructions at all, other than that already mentioned, let alone offered or mentioned any other preparation for the procedure, such as disrobing, or receiving a hospital gown etc."  (Id.).  The drug took effect rapidly, "as expressly desired by provider staff who had given the drug, who had since left the room."  (Id.).  As Foster and Perry talked, "the drug suddenly took effect," and Perry "began to slur in her speech and then began to slope and slide down off of her chair."  (Id.).

Foster "immediately notified the [staff member] that the drug [was taking] effect very quickly, to which said person replied: 'Ain't nothing I can do, the doctor will be down.', or something

---

[8] Plaintiffs assert that "[m]edical records will show that the drug provided to Perry was Xanax."  (Doc. 34 at 3).

to that effect." (Id. at 4). Foster "trotted back to his wife and propped her up against himself as best he could," but Foster was unable to hold Perry up, and she started to slip further down out of the chair and toward the floor. (Id.). Foster "sprinted to the office/lobby area to yet again ask for assistance," to which "the same staff person again replied with irritation of tone: 'I told you ain't nothing I can do,' then added: 'That's not my job.'" (Id.).

"Upon hearing this, Foster then demanded a wheelchair while announcing that he was getting his wife 'out of here', and 'give me that wheelchair.'" (Id.). "By this time," Foster heard the staff member who had administered the drug speaking to the nurse. (Id.). The nurse "was in possession of the wheelchair but did not wish to hand it over to Foster and tried to *order* [Foster] outside without his wife and insisted that she did not have to give the wheelchair to Foster." (Id. (emphasis in original)). Plaintiffs allege that Foster overheard the nurse ask the staff member: "[W]hat's homeboy's deal?" (Id.). When the staff member replied that Foster wanted the wheelchair and was talking about "taking his wife out of here[,]" the nurse allegedly responded: "Good, we get enough of them anyway." (Id. at 4-5).

Foster told the nurse "that he did not trust 'any of you', and further stated that she should refrain from barking orders to Foster after the mistreatment of his wife at the hands of the same

people[.]"    (Id. at 5).    Plaintiffs allege that the nurse "then racially mocked Foster by pretending to speak what has been known as 'ebonics', saying: 'I know I'm not cho mama,' and putting stereotypical emphasis on the words 'CHO MAMA' and waving her hands like she was doing the black face, while laughing."    (Id.).

Plaintiffs allege that as Foster got Perry into a wheelchair without help from any of the medical staff, Foster turned around and saw Dr. Irvin "standing in the doorway of the outpatient room, making his first appearance as known to [Foster], with his hands on his hips with clear anger of expression."    (Id.).    Plaintiffs allege that Dr. Irvin "stated in aggressive manner and clearly directing the question towards [Foster]: 'Is there a problem here?', and, 'Why are you causing problems in my office?', . . . all WITHOUT ASKING A SINGLE QUESTION as to what had happened, or what's going on."    (Id.).    Plaintiffs allege that after Foster "attempted to point out" that Dr. Irvin's staff "had Foster's wife on the floor and didn't even have the decency to assist Foster to pick up his wife," Dr. Irvin "rudely and aggressively interrupted Foster saying something to the effect of: 'I don't give a shit. You don't come into my office and cause a rukus."    (Id. at 5-6). Foster responded: "You don't allow your staff to assault my wife and have her on the floor because I don't play that."    (Id. at 6). Dr. Irvin allegedly responded by yelling "I don't play either" in Foster's direction.    (Id.).

Plaintiffs allege that Foster "resisted the temptation of getting into a shouting match and headed towards the exit." (Id.). Plaintiffs allege that Foster saw Dr. Irvin, the nurse, and the staff member "near the exit" as he was leaving the building and "heard" the nurse and Dr. Irvin "make racial remarks towards Foster." (Id.). Specifically, Plaintiffs allege that the nurse "could be heard making Monkey sounds under her breath, to which [Dr. Irvin] right behind the Monkey sound said: 'Now you know why Monkey.'" (Id.).

Plaintiffs further allege that Dr. Irvin threatened to call the police on Foster "and fabricate false allegations against [him], with verbal agreements of approval and encouragement by both" the nurse and the staff member. (Id.). Plaintiffs allege that when Foster "heard the police remarks," he responded: "I don't believe you will call them because you people here are racists and you assaulted my wife so go ahead, call!" (Id.). After a few seconds during which Dr. Irvin did not move to call the police, Foster "then continued on about trying to rescue his wife from the scenario." (Id.).

"Some weeks" later, a "Medical Discharge Form" arrived at Foster's home for Perry, which cited as the reason for Perry's discharge from Dr. Irvin's practice: "Inappropriate behavior in office or towards staff Husband's behavior – Not patient Threatening." (Id. at 6-7). On the form, Dr. Irvin offered "to

recommend another pain doctor, and to fill a one time prescription for [Perry's] previously prescribed medication" from Dr. Irvin. (Id. at 7). However, Perry "had absolutely no trust in [Dr. Irvin] at this point" and did not accept these offers. (Id.). Plaintiffs allege that Perry arrived "for her appointment in significant pain, and left in worse pain, and for longer duration, continuing until this very day, on account of [Dr. Irvin's] refusal to perform the [scheduled] procedure[.]" (Id.). Plaintiffs further allege that "for a long period of time post the incident Perry went without prescription medication." (Id.).

Plaintiffs claim that Foster "was racially harrassed to the extreme, and disrespected with racial slurs because he wanted to know why his wife had to be on the floor," and that Perry "was refused treatment midstream because Foster questioned the treatment at the hands of [Dr. Irvin's] staff[.]" (Id.). Plaintiffs also contend that Dr. Irvin and his staff "put Foster in REASONABLE fear of attack by police . . . due to any fabrications threatened to be made against [Foster]." (Id.). Plaintiffs assert that Dr. Irvin and his staff "intentionally created a hostile environment, directed specifically at the plaintiffs due to their race based in large part, on the derogatory terms by which the plaintiffs were referred, and the plaintiffs were racially humiliated and driven out of the facility on account their race." (Id. at 8). Plaintiffs allege that Dr. Irvin and his staff "worked

in concert by verbally communicating with each other . . . to agree
to call the police, fabricate a lie to the police against [Foster],
not treat [Perry], and to drive the plaintiffs out of the facility
on account of their race.  (Id.).[9]

Plaintiffs assert the following six "cause[s] of action":

***FIRST CAUSE OF ACTION:***

Defendant IRVIN and his staff, by providing a drug to
Plaintiff PERRY, failing to check on PERRY and refusing
to assist FOSTER after having permitted PERRY to fall to
the floor, and hurling racial slurs, conspired to,
and/or individually did in fact commit infliction of
physical assault upon Plaintiff PERRY by not properly
preparing PERRY, as the patient, for her procedure,
giving PERRY Xanax and then allowing her to fall to the
floor and to remain on the floor until Plaintiff FOSTER
was able to wrestle the Wheelchair away from UNIFORMED
FEMALE NURSE and all while Plaintiff FOSTER is under
verbal attack, thus intentional infliction of emotional
distress upon both the plaintiffs because of their race,
and this also violated both plaintiffs constitutional
right to be free from discrimination both in a medical
facility which receives federal funds or those
facilities that do not. ***14th Amendment to the U.S. Const.***

***SECOND CAUSE OF ACTION:***

When IRVIN and his staff as named herein agreed by words
of "I told you ain't nothing I can do" and ". . . it
ain't my job.", and ordered the Plaintiffs out, hurled
racial slurs such as "Monkey" and "them" and other acts,
while simultaneously refusing to assist Plaintiff FOSTER
pick up his wife, Plaintiff PERRY, even though it was
that staff who caused Plaintiff PERRY to be on the floor
unconscious in the first place.  IRVIN threatened FOSTER
that he would call the police and fabricate a story in
order to get FOSTER arrested, or intimidated on behalf

---

[9] Plaintiffs also state that Foster "filed a Complaint with the
Alabama Board of Medical Examiners on or about June 17, 2021 with
the Alabama Board of Medical Examiners declining to act."  (Doc.
34 at 8).

of the the fabricating IRVIN.  This was done to the detriment of the Plaintiffs right of access to the facility, but specifically Plaintiff PERRY as patient on the day in question.  This conduct in a medical facility, federally funded or not, contrary to *42 USC §2000(d)*, worked to, as intended, deny the Plaintiffs equal access to said facility, and was and is also violating of the Plaintiffs as constitutional right to be free from discrimination and to have freedom of association.  *1st and 14th Amendment to the U.S. Const.*

*THIRD CAUSE OF ACTION:*

When NON-UNIFORMED FEMALE STAFF PERSON administered the narcotic 'XANAX' to Plaintiff PERRY, instructing PERRY to chew it because "I want it to work in five minutes", failed to properly instrct and/or prepare Plaintiff PERRY for her outpatient surgery, and then staff refusal to assist Plaintiff FOSTER with getting his wife, PERRY, off the floor, and

(a). When Defendant IRVIN finally arrived to the outpatient room, he immediately accused FOSTER of causing a ruckus and threatening FOSTER with police action by way of fabrication, even though FOSTER was where he had a right to be and doing what he had a right to do, to wit: escort his wife to an outpatient surgery to be performed on his wife, to protect and defend his wife, called Plaintiffs racial slurs and drove the Plaintiffs out of the facility.  IRVIN committed both medical malpractice as well as abridged PERRY'S unequivocal right to seek treatment at a place of her choosing, without being discriminated against, such facility also receiving federal funds, contrary to *42 USC §2000(d), 1st and 14th Amend. To the U.S. Const.*

*FOURTH CAUSE OF ACTION:*

Defenant IRVIN worked in concert with his staff, to deprive both plaintiffs of their constitutional right to be free from discrimination on the basis of their race of being Black Americans by hurling racial slurs, threatened to file a false police report to cause police to arrest FOSTER based upon that fabrication by IRVIN and verbally as well as gestures and mannerisms like nodding in agreement etc, and permitting Plaintiff PERRY to fall to the floor and stay there for a time, and directly looking at each other nodding in agreement and

13

saying things like: "Yep. Uh hm".  Such an introduction of police against FOSTER based upon fabrication by IRVIN could have resulted in deadly force or similar.

IRVIN permitted his staff person UNIFORMED FEMALE NURSE refusal to release the Wheelchair she was holding hostage to Plaintiff FOSTER so that FOSTER could rescue his wife (PERRY) and refused to <u>finish</u> treatment of Plaintiff PERRY on account of Plaintiff PERRY'S race of being an African-American. This conduct constituted and constitutes medical malpractice, and because such was due to the plaintiffs race of being Black Americans, was thus discriminatory and violative of the Plaintiff PERRY'S right to receive competent medical treatment, and both plaintiffs constitutional right to be free from discrimination and freedom of association. *1st* and *14th Amend. to the U.S. Const. & 42 USC Sec.2000(d)*

*The Pendent jurisiction of the court is hereby invoked.*

*FIFTH CAUSE OF ACTION:*

Both plaintiffs were racially harrassed to extreme, humiliated, threatened with introduction of gun by way of police, threatened to fabricate a report to the police potentially leading to FOSTER being further victimized on behalf of IRVIN by police because of those lies, such actions and words supported by other words of IRVIN'S staff persons, racial slurs such as "Monkey" and "them" by IRVIN and UNIFORMED FEMALE NURSE, permitting Plaintiff PERRY to fall to the floor and to remain there for a time while FOSTER was further verbally assaulted with a barrage of insults and refusal to even release the Wheelchair to Plaintiff FOSTER so that he could rescue his wife, and even attempting to force FOSTER to go outside without is wife, leaving her in the very hand which had just allowed PERRY to fall to the floor and refused to help FOSTER get PERRY up and refused to do anything to help all constituted and constitutes racial harrassment amounting to a violation of both plaintiffs right of association, deriving from the right of travel, and to be free from discrimination. *1st* and *14th Amend. to the U.S. Const.  See also 42 USC Sec.1985(3)* and the the case of *__Jimenez v. Wellstar Health System__*, 596 F.3d 1304, 1312 (11th Cir.2010).

***SIXTH CAUSE OF ACTION:***

When Defendant IRVIN came on scene of the complained of incident at the outpatient room and immediately began to join his staff, UNIFORMED FEMALE NURSE and NON-UNIFORMED FEMALE STAFF person in hurling insults and impeding FOSTER'S ability to rescue his wife, Plaintiff PERRY, refused to continue with the procedure, even though he was totally aware that his staff had already administered Xanax narcotic in preparation for the said procedure, substantiates that IRVIN failed to properly train, and/or failed to determine the proper training of his staff, culminating to his staff, and even he himself, hurled racial slurs, calling Plaintiff FOSTER Monkey, while UNIFORMED FEMALE NURSE making the sound of a Monkey aimed at demeaning Plaintiff FOSTER, threatened FOSTER with fabricating a false police report in order to get FOSTER arrested, intimidated, or potentially lethal or less than lethal force being usd on FOSTER on behalf of IRVIN due to such farication to law enforcement, dosing out medication to Plaintiff PERRY without adequat preparation such that PERRY would not end up on the floor, and no assistance rendered to FOSTER or PERRY, all amounting to medical malpractice as relate to Plaintiff PERRY, and constitutional violations as to both FOSTER and PERRY, the constitutions' ban on discrimination, and freedom of association. ***1st & 14th Amend. t the U.S. Const.***

(Id. at 8-11).

Under the heading "Injury," Plaintiffs state:

***Plaintiff FOSTER:***

1.  The constitutional right to be free from discrimination
2.  The constitutional right of Association
3.  Extreme Racial Harrassment

***Plaintiff PERRY:***

1.  Plaintiff PERRY'S constitutional right to be free from discrimination
2.  Plaintiff PERRY'S constitutional right of association
3.  Extreme Racial Harrassment

4.   More extensive back pain existing to this very day (Id. at 11-12).

For relief, Perry requests compensatory damages in the amount of $3,500,000.00, punitive damages in the amount of $3,500,000.00, fees and costs, and any other relief which this Court deems just and proper.  (Id. at 12).  Foster requests compensatory damages in the amount of $2,700,000.00, punitive damages in the amount of $2,700,000.00, fees and costs, and any other relief which this Court deems just and proper.  (Id.).

On December 12, 2023, Dr. Irvin filed the instant motion to dismiss Plaintiffs' second amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 36).  Dr. Irvin argues that the second amended complaint should be dismissed with prejudice for the following reasons:

> (1) the Court does not have subject matter jurisdiction over Plaintiffs' causes of action because they have failed to properly assert the same in their [Second] Amended Complaint; (2) the Court does not have subject matter jurisdiction because there is not complete diversity between the parties; (3) the Court does not have subject matter jurisdiction because Plaintiffs have not presented a substantial federal question; (4) Plaintiffs' claims fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); (5) Plaintiffs' [Second] Amended Complaint fails to comply with the specificity standards as required by Fed. R. Civ. P. 8 and 10; (6) Plaintiffs' [Second] Amended Complaint fails to comply with the pleading standards outlined in this Court's November 7, 2023, Order (Doc. 33); (7) Plaintiffs' state law claims are due to be dismissed for lack of subject matter jurisdiction; and (8) Plaintiffs' state law claims are

16

barred by applicable statutes of limitation under Alabama law.

(Id. at 5-6).  Plaintiffs filed a response in opposition to the motion (Doc. 38; see also Doc. 39), and Dr. Irvin filed a reply. (Doc. 40).  Thus, Dr. Irvin's motion to dismiss is ripe for resolution.

## II.  **STANDARDS OF REVIEW**

### A.  **Rule 12(b)(1).**

A party may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) challenge to subject matter jurisdiction may take the form of a facial attack or a factual attack on the complaint.  Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam).  In a facial attack, the court must evaluate whether the complaint alleges a sufficient basis for subject matter jurisdiction, while accepting all factual allegations as true for purposes of the motion.   Id. at 1529.  In contrast, a factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings.  Id.  In a factual challenge to subject matter jurisdiction, the court may consider matters outside the pleadings and weigh conflicting evidence, and no presumption of truthfulness attaches to the plaintiff's allegations.  Id.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

action." Fed. R. Civ. P. 12(h)(3). Dismissal for lack of subject matter jurisdiction "must be without prejudice." McIntosh v. Royal Caribbean Cruises, Ltd., 5 F.4th 1309, 1313 (11th Cir. 2021).

### B.   Rule 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This necessarily requires that a plaintiff include factual allegations that plausibly support each essential element of his claim. Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010).

When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017). That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani

18

v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011). A complaint does not need detailed factual allegations, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

**B.   Rules 8 and 10.**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted). Each allegation in a complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Relatedly, Rule 10(b) mandates that a complaint "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count" to the extent doing so "would promote clarity." Fed. R. Civ. P. 10(b). These rules "work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and so that a] court can determine which facts support which claims and whether the plaintiff has stated

19

any claims upon which relief can be granted." <u>Fikes v. City of Daphne</u>, 79 F.3d 1079, 1082 (11th Cir. 1996) (quotation omitted).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four general categories of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) those that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." <u>Id.</u> at 1321-23. The unifying characteristic of all shotgun pleadings is that they "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." <u>Id.</u>

    **D.** ***Pro Se*** **Litigation.**

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th

Cir. 1998) (per curiam).  However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).  Even a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

### III. DISCUSSION

At the outset, the undersigned addresses Dr. Irvin's contention that the second amended complaint should be dismissed with prejudice because Plaintiffs failed to "comply with the specificity standards as required by Fed. R. Civ. P. 8 and 10" and "the pleading standards outlined in this Court's November 7, 2023, Order." (See Doc. 36 at 6, 24-26).  For the reasons stated below, the Court finds this argument to be dispositive.

In the order dated November 7, 2023, the Court informed Plaintiffs that their proposed second amended complaint was a shotgun pleading because it failed to adequately identify which claims for relief Foster and Perry were seeking to assert in each of their counts and appeared to improperly lump multiple claims for relief together within individual counts.  (Doc. 33 at 18).  Relatedly, the Court noted that the statutes cited in the complaint's initial clause were not referenced in any of the

21

counts, which added to the difficulty in discerning which statute or other legal theory each "cause of action" was brought under. (Id.). The Court further noted that the complaint's "cause[s] of action" failed to differentiate between Foster's claims and Perry's claims, even though the facts relevant to their respective claims for relief were different. (Id. at 19). The Court also pointed out that most of these same deficiencies were present in Foster's then-operative first amended complaint. (Id. at 20 n.10).

The Court provided Plaintiffs with specific pleading instructions to assist them in rectifying these deficiencies when drafting their second amended complaint. (Id. at 21). Specifically, the Court instructed Plaintiffs to "separate[e] each discrete cause of action or claim for relief into different, numbered count;" to "includ[e] a heading for each numbered count that identifies which Plaintiff(s) the count is asserted on behalf of, which Defendant(s) the count is asserted against, and which statute, constitutional provision, or other legal theory the claim is brought under;" and to identify within each count of the complaint "which specific factual allegations and acts by each Defendant support the cause of action asserted against the Defendant in that count." (Id.). The Court specifically warned Plaintiffs that the failure to address and correct the pleading deficiencies described in the Court's order would result in a

recommendation that this action be dismissed with prejudice.  (<u>Id.</u> at 22).

Plaintiffs disregarded the Court's pleading instructions almost entirely.[10]  The second amended complaint is afflicted with the same fundamental deficiencies as its predecessors, and it plainly reflects a less-than-halfhearted attempt by Plaintiffs to cure the deficiencies outlined in the Court's previous order.  Most importantly, the second amended complaint is a shotgun pleading because it still fails to provide adequate notice of which legal claims for relief Plaintiffs are attempting to assert in this action.  <u>See, e.g.</u>, <u>Semeniuk v. Hernando County</u>, 2013 U.S. Dist. LEXIS 197134, at *2, 2013 WL 12137758, at *1 (M.D. Fla. Dec. 23, 2013) (finding that complaint was a shotgun pleading where it was "difficult to determine the exact causes of action asserted, and the complaint [was] structured in a manner that would make it difficult for Defendant to frame an appropriate response").  Although Plaintiffs' underlying factual allegations are reasonably clear, the counts listed in the second amended complaint (which Plaintiffs label as "cause[s] of action") ramble, repeat themselves, and cite multiple constitutional provisions and statutes, without clarifying Plaintiffs' legal theories or

---

[10]  Indeed, Plaintiffs ignored even the Court's most basic instructions, including the instruction to identify their pleading as a second amended complaint, and the instruction to include headings for each count.

explaining how the cited provisions apply to the facts alleged or relate to one another.

Relatedly, the second amended falls into the third shotgun pleading category because Plaintiffs repeatedly appear to group more than one distinct claim or theory of liability under the veil of a single count.[11]  See, e.g., Burgeson v. Collier County, 2010 U.S. Dist. LEXIS 149522, at *5, 2010 WL 11506949, at *2 (M.D. Fla. July 21, 2010) (noting that a complaint may "constitute a 'shotgun pleading' when it groups several causes of action, each with its own legal standard, into a single count"); Bickerstaff Clay Prod. Co. v. Harris Cty., Ga. By & Through Bd. of Comm'rs, 89 F.3d 1481, 1485 n.4 (11th Cir. 1996) ("The complaint is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief."); O.E. Wheel Distributors, LLC v. Mobile Hi-Tech Wheels, LLC, 2022 U.S. Dist. LEXIS 131744, at *11, 2022 WL 2918028, at *5 (M.D. Fla. July 25, 2022) ("[T]he Court will dismiss the amended complaint under the third category of shotgun

---

[11] For example, Plaintiffs' first cause of action cites the Fourteenth Amendment and alleges "assault upon Plaintiff PERRY[,]" "intentional infliction of emotional distress upon both the plaintiffs[,]" and violation of "both plaintiffs constitutional rights to be free from discrimination both in a medical facility which receives federal funds or those facilities that do not." (Doc. 34 at 8).  Similarly, Plaintiffs' sixth cause of action cites both the First and Fourteenth Amendments and asserts "medical malpractice as relate to Plaintiff PERRY, and constitutional violations as to both FOSTER and PERRY, the constitutions' ban on discrimination, and freedom of association."  (Id. at 11).

pleadings, because it groups multiple causes of action under the veil of a single count"); Kennedy v. Bell S. Telecomm., Inc. (AT&T), 546 F. App'x 817, 818, 820 (11th Cir. 2013) (per curiam) (affirming district court's dismissal of plaintiff's second amended complaint with prejudice for failure to comply with Federal Rule of Civil Procedure 10(b)'s "one-claim-per-count rule"); Hayes v. Bank of N.Y. Mellon, 2014 WL 3887922, at *8 (N.D. Ga. Aug. 6, 2014) (stating that "Defendants cannot be expected to frame a responsive pleading" where "Plaintiffs . . . mix together and conjoin multiple legal theories within their counts" and "it is difficult to decipher what are the substance of Plaintiffs' claims"), aff'd, 592 F. App'x 891 (11th Cir. 2015). Plaintiffs also continue their practice of citing authorities in the second amended complaint's opening clause that they do not reference again throughout the complaint. These deficiencies essentially leave the Court and Dr. Irvin to speculate as to which (and even how many) claims for relief Plaintiffs are attempting to assert in this action, regardless of their six nominal "cause[s] of action."

The pleading defects described above frustrate the Court's ability to determine whether Plaintiffs have stated claims upon which relief can be granted. Dr. Irvin has attempted to interpret the second amended complaint in order to raise substantive arguments demonstrating that Plaintiffs have failed to present a substantial federal question or otherwise failed to state a claim

upon which relief can be granted.  (See Doc. 36).  However, to consider these arguments would require the Court to engage in guesswork as to which claims Plaintiffs are attempting to state in their complaint and which facts are intended to support which claims.  See Tran v. City of Holmes Beach, 817 F. App'x 911, 914 (11th Cir. 2020) (per curiam) ("Fostering guesswork is not a goal of pleading, and requiring it violates not only Rule 8 but also Rule 10(b).").  Because they require speculation and guesswork, the Court will not consider Dr. Irvin's substantive arguments in favor of dismissal.  Instead, the Court concludes that dismissal with prejudice is warranted based on Plaintiffs' failure to remedy pleading deficiencies identified in the Court's order dated November 7, 2023, and their repeated failure to submit a complaint that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Pro se plaintiffs must generally be given at least one chance to remedy pleading deficiencies before their action can be dismissed on shotgun pleading grounds.  Nezbeda v. Liberty Mut. Ins. Corp., 789 F. App'x 180, 183 (11th Cir. 2019) (per curiam).  "Once a district court gives a plaintiff fair notice of the specific defects in the complaint and a meaningful chance to fix them, dismissal with prejudice on shotgun pleading grounds is proper if a plaintiff files an amended complaint afflicted with the same defects."  Halstead v. Espinoza, 2023 U.S. App. LEXIS

5529, at *4, 2023 WL 2399288, at *2 (11th Cir. Mar. 8, 2023) (per curiam) (citing <u>Jackson v. Bank of Am., N.A.,</u> 898 F.3d 1348, 1358-59 (11th Cir. 2018) ("Here, after being put on notice by Defendants of the specific defects in their complaint, the Jacksons filed an amended complaint afflicted with the same defects, attempting halfheartedly to cure only one of the pleading's many ailments . . . . The District Court should have dismissed the amended complaint with prejudice because . . . the amended complaint was incomprehensible.")); <u>see also</u> <u>Pelletier v. Zweifel</u>, 921 F.2d 1465, 1522 n.103 (11th Cir. 1991) ("If Pelletier had refused to comply with the court's directive to file a repleader in conformity with the rules of civil procedure, the court could have dismissed the complaint under Fed.R.Civ.P. 41(b), on the ground that Pelletier failed to comply with Fed.R.Civ.P. 8(a) and (e) to provide a short, clear, and concise statement of the claim.") (citations omitted), <u>abrogated on other grounds by</u> <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639 (2008). The Eleventh Circuit has explicitly stated that it "will not adopt a rule requiring district courts to endure endless shotgun pleadings." <u>Vibe Micro, Inc. v. Shabanets</u>, 878 F.3d 1291, 1297 (11th Cir. 2018).

As described in detail above, the Court's previous order explained in detail why Foster's first amended complaint and Plaintiffs' proposed second amended complaint were shotgun

pleadings that left the Court without adequate notice as to which claims for relief Plaintiffs were attempting to assert in this action and which factual allegations were intended to support each of those claims. The Court provided detailed instructions on how to correct the identified deficiencies and formulate a proper complaint that provided adequate notice of Plaintiffs' claims. The Court also warned Plaintiffs in no uncertain terms that filing a second amended complaint that did not plead each Plaintiff's claims with sufficient specificity to conform to Rules 8 and 10 of the Federal Rules of Civil Procedure would result in a recommendation that this action be dismissed with prejudice.[12]

In disregard of the Court's warnings and instructions, Plaintiffs filed another shotgun pleading that contains most of the same fundamental pleading errors identified by the Court previously. At this juncture, it appears that Plaintiffs are unable or unwilling to revise their pleadings to comply with the Federal Rules of Civil Procedure and the Court's orders, and there

---

[12] The Court notes that Dr. Irvin has filed three motions to dismiss in this action and has submitted extensive briefing pointing out defects in Plaintiffs' complaints or proposed complaints. The Court further notes that the complaint has twice been amended in response to Dr. Irvin's motions to dismiss. However, despite being provided multiple opportunities to formulate a complaint that complies with the Federal Rules of Civil Procedure and states a claim upon which relief can be granted, Plaintiffs' second amended complaint is no less of a shotgun pleading than the complaints previously submitted.

is no indication after multiple iterations of the complaint that any further opportunities to amend would lead to improved results.

Accordingly, the undersigned recommends that Dr. Irvin's motion to dismiss (Doc. 36) be **GRANTED in part**. To the extent Plaintiffs' second amended complaint includes federal claims, it is recommended that Plaintiffs' federal claims be dismissed with prejudice because the second amended complaint is a shotgun pleading. See Tran, 817 F. App'x at 915 (holding that the district court did not err in granting motions to dismiss *pro se* plaintiffs' third amended complaint with prejudice on shotgun pleading grounds because the court gave plaintiffs two chances to fix their pleading mistakes - "twice as many chances as are required" - and "[i]nstead of fixing the mistakes they made in their complaint, they doubled down and replaced one shotgun pleading with another shotgun pleading").

"When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well." Vibe Micro, 878 F.3d at 1296. "Although it is possible for the district court to continue to exercise supplemental jurisdiction over these pendant claims, if the district court instead chooses to dismiss the state law claims, it usually should do so without prejudice as to refiling in state court." Id. (internal citation omitted). This is particularly true where, as here, "the dismissal occurs without any analysis of the merits of

the state claims."[13]  Id.  Therefore, to the extent Plaintiffs' second amended complaint includes state law claims, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over such claims and dismiss Plaintiffs' state law claims without prejudice as to refiling them in state court.[14]  See id. at 1296-97.

## IV.   CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Dr. Irvin's motion to dismiss Plaintiffs' second amended complaint (Doc. 36) be **GRANTED in part**, that Plaintiffs' federal claims be **DISMISSED with prejudice**, and that Plaintiffs' state law claims be **DISMISSED without prejudice** as to their ability to be refiled in state court.

---

[13] The Eleventh Circuit's reasoning "in Vibe Micro was because the state law claims there were in federal court on the basis of supplemental jurisdiction, rather than diversity jurisdiction." Clifford v. Federman, 855 F. App'x 525, 530 (11th Cir. 2021) (per curiam).  Here, despite Plaintiffs' conclusory assertion that the parties to this action are citizens of different states, diversity jurisdiction does not exist because Perry and Dr. Irvin are both citizens of Alabama.  (See Doc. 34 at 2; Doc. 36 at 9).

[14] The Court acknowledges Dr. Irvin's argument that any state law claims asserted in the second amended complaint are barred by the applicable statutes of limitation.  (See Doc. 36 at 24).  However, the undersigned expresses no opinion as to the potential untimeliness of Plaintiffs' state law claims in the event Plaintiffs choose to refile them in state court.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

31

**DONE** this **3rd** day of **April, 2024.**

          **/s/ SONJA F. BIVINS**
        **UNITED STATES MAGISTRATE JUDGE**